## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REYNOLDS INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. 1:15-cv-322 |
| THE VAPOR SHOP, INC., | ) | |
| d/b/a "THEVAPORSHOPINC.COM", | ) | |
| and TODD KUNDERT, individually, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, Reynolds Innovations Inc. ("RII") states the following for its Complaint against Defendants The Vapor Shop, Inc. d/b/a "TheVaporShopInc.com"; and Todd Kundert, individually (collectively, "Defendants"):

## NATURE OF THE ACTION

1.      This is an action at law and in equity for trademark infringement, unfair competition and false designation of origin, and trademark dilution arising under Sections 2, 32, 37 and 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1051 *et seq.*; trademark infringement and unfair competition arising under the common law of the State of North Carolina; and unfair or deceptive trade practices arising under N.C. Gen. Stat. §§ 75-1 *et seq.*

2.      As more fully described below, without RII's authorization, Defendants have used and continue to use trademarks that are colorable imitations of, and are

1

confusingly similar to, RII's federally-registered trademarks in the United States in connection with the sale of Defendants' liquid nicotine products via the Internet. In particular, Defendants have used, without RII's authorization, colorable imitations of the famous CAMEL and Camel Design trademarks and variations thereof (collectively, the "CAMEL Marks"), the famous KOOL trademarks (collectively the "KOOL Marks"), the famous SALEM trademarks (collectively the "SALEM Marks"), and the famous LUCKY STRIKE trademarks (collectively the "LUCKY STRIKE Marks"). Examples of Defendants' infringing uses are shown immediately below.



3.     On information and belief, Defendants have been and continue to be engaged in the business of operating the Internet website at <www.thevaporshopinc.com> ("Defendants' Website"), through which Defendants actively promote and sell flavored liquid nicotine products known as "e-liquid" for use with electronic cigarettes. On further information and belief, without RII's authorization, Defendants have used RII's famous and federally-registered CAMEL Marks, LUCKY

2

STRIKE Marks, SALEM Marks, and KOOL Marks, or colorable imitations thereof, in the advertising and sale of its liquid nicotine products.

4.    On information and belief, without RII's authorization, Defendants have sold and shipped, and continue to sell and ship, varieties of liquid nicotine products bearing trademarks that are confusingly similar to, and colorable imitations of, RII's federally-registered and famous CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks, and KOOL Marks to customers in the United States and in this District.

5.    RII has not authorized or permitted Defendants to use its CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks, and KOOL Marks, or colorable imitations of any of the marks owned by RII, in connection with Defendants' liquid nicotine products. Unless enjoined by this Court, Defendants' conduct will continue to result in a likelihood of consumer confusion and irreparable injury to RII.

## PARTIES, JURISDICTION, AND VENUE

6.    RII is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 401 North Main Street, Winston-Salem, North Carolina.  RII is a trademark holding company and a subsidiary of R.J. Reynolds Tobacco Company.  RII is therefore the record owner, in its own right or by assignment from its predecessors-in-interest, of the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks, and KOOL Marks that are at issue in this dispute, including the federal trademark registrations that are identified below.  For convenience, and unless the context indicates otherwise, the term "Reynolds" will be used to refer collectively to RII,

3

RII's predecessors-in-interest and/or RII's corporate affiliates who use the trademarks owned by RII under authority from RII.

7.    On information and belief, Defendant The Vapor Shop, Inc. (the "Defendant Company") is a corporation organized under the laws of Illinois, with an address at 631 Harlem Road, Machesney Park, Illinois, 61115.  On further information and belief, the Defendant Company conducts business via Defendants' Website.

8.    On information and belief, Defendant Todd Kundert ("Mr. Kundert"), is a resident of Illinois with an address at 631 Harlem Road, Machesney Park, Illinois, 61115. On further information and belief, Mr. Kundert directs and controls the business activities of the Defendant Company, including the operation of Defendants' Website.

9.    This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.  As to the state law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10.    This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of doing business in this district. Defendants own and operate Defendants' Website, which is an interactive website that is accessible by Internet users in this District and offer goods to residents of North Carolina. The infringing products that Defendants advertise and offer under the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks, and KOOL Marks or colorable imitations thereof, and make available through Defendants' Website to purchasers in the United States, are capable of being ordered, and have been ordered, by purchasers in North

4

Carolina, and are capable of being shipped, and have been shipped, to purchasers in North Carolina.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

12.     This Court has jurisdiction to enter injunctive relief, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

13.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

14.     At all times material hereto, Reynolds has been, and currently is still, engaged in the business of manufacturing, distributing, marketing, advertising, offering for sale, and selling various types of tobacco products throughout the United States under multiple trademarks owned by RII and under authority from RII.  As more fully described below, RII's famous CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks, and KOOL Marks are registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") and are used in connection with the sale of cigarettes, among other things.  RII sells products under the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks, and KOOL Marks across the United States.  RII's CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks, and KOOL Marks are famous throughout the United States.

15.     In addition to its traditional tobacco products, Reynolds has recently begun

5

offering for sale in the marketplace, under the brand name VUSE, electronic cigarette products, components and accessories.

<p style="text-align:center">CAMEL Marks</p>

16.     Beginning at least as early as 1913, Reynolds adopted and began using the distinctive designation CAMEL in interstate commerce for the purpose of identifying and distinguishing Reynolds's tobacco products from the products of other manufacturers and distributors of tobacco.  Reynolds has advertised, marketed, distributed, offered for sale, and sold its products under the CAMEL Marks continuously for 100 years.

17.     On September 30, 1919, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 126,760 for the trademark CAMEL (stylized, as shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'760 Registration").

<p style="text-align:center; font-weight:bold; font-size:2em">CAMEL</p>

The '760 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '760 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '760 Registration, together with USPTO assignment records reflecting RII's ownership of the '760 Registration, is attached hereto as Exhibit 1.

<p style="text-align:center">6</p>

18.    On January 13, 1976, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,030,232 for the Camel Design trademark (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'232 Registration").



The '232 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '232 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '232 Registration, together with USPTO assignment records reflecting RII's ownership of the '232 Registration, is attached hereto as Exhibit 2.

19.    On April 29, 1986, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,391,824 for the trademark CAMEL & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'824 Registration").

7



The '824 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '824 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '824 Registration, together with USPTO assignment records reflecting RII's ownership of the '824 Registration, is attached hereto as Exhibit 3.

20.     On October 7, 2008, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,512,391 for the trademark CAMEL & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'391 Registration").



21.     The '391 Registration depicts one example of packaging for CAMEL cigarettes (the "Camel Pack Design"). The '391 Registration, which RII duly acquired

8

by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '391 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '391 Registration, together with USPTO assignment records reflecting RII's ownership of the '391 Registration, is attached hereto as Exhibit 4.

22.     On February 20, 2007, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,211,464 for the trademark CAMEL, in standard characters, on the USPTO's Principal Register for use in connection with "snuff, namely snus" (the "'464 Registration"). The '464 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '464 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "snuff, namely snus." A true and accurate copy of the Certificate of Registration for the '464 Registration, together with USPTO assignment records reflecting RII's ownership of the '464 Registration, is attached hereto as Exhibit 5.

23.     On March 31, 2009, RII was granted U.S. Trademark Registration No. 3,599,620 for the Camel Design trademark (shown below) on the USPTO's Principal

Register for use in connection with "smokeless tobacco" (the "'620 Registration").



A true and accurate copy of the Certificate of Registration for the '620 Registration, together with USPTO assignment records reflecting RII's ownership of the '620 Registration, is attached hereto as <u>Exhibit 6</u>.  The '620 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '620 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "smokeless tobacco."   (The '760, '232, '824, '391, '464, and '620 Registrations are referred to collectively hereinafter as the "CAMEL Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "CAMEL Marks.")

24.	RII owns, *inter alia*, the CAMEL Registrations, the CAMEL Marks, and all the goodwill associated therewith in the United States.  The CAMEL Registrations remain valid, subsisting, and uncancelled, and the CAMEL Registrations have become incontestable as described above.

25.     The CAMEL Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

26.     The CAMEL Marks inherently serve to distinguish Reynolds's tobacco products from those of others.  The CAMEL Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the CAMEL Marks throughout the United States, consumers of tobacco products recognize the CAMEL Marks as symbols of the highest quality of tobacco products, and associate and identify the CAMEL Marks with Reynolds or with a single source.  Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

<div align="center">LUCKY STRIKE Marks</div>

27.     Beginning at least as early as January 1, 1883, Reynolds's predecessor-in-interest adopted and began using the distinctive designation LUCKY STRIKE in interstate commerce for the purpose of identifying and distinguishing its tobacco products from the products of other manufacturers and distributors of tobacco.  Reynolds or its predecessors-in-interest have advertised, marketed, distributed, offered for sale, and sold their products under the LUCKY STRIKE mark continuously for more than one hundred (100) years.

28.     On September 4, 1917, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 118,372 for the trademark LUCKY STRIKE on the USPTO's Principal Register for use in connection with "cigarettes" (the "'372

Registration").  Reynolds has used this LUCKY STRIKE mark in interstate commerce in connection with cigarettes since at least January 1, 1883. The '372 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '372 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '372 Registration, together with USPTO assignment records reflecting RII's ownership of the '372 Registration, is attached hereto as <u>Exhibit 7</u>.

29.     On May 26, 1936, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 335,113 for the trademark LUCKIES & Design, depicted below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'113 Registration").  Reynolds has used this LUCKY STRIKE mark in interstate commerce in connection with cigarettes since at least June 1926.



The '113 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '113 Registration therefore constitutes

12

conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '113 Registration, together with USPTO assignment records reflecting RII's ownership of the '113 Registration, is attached hereto as Exhibit 8.

30.     On April 25, 1939, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 366,744 for the trademark LUCKY STRIKE & Design, depicted below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'744 Registration"). Reynolds has used this LUCKY STRIKE mark in interstate commerce in connection with cigarettes since at least June 1926.



The '744 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '744 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate

of Registration for the '744 Registration, together with USPTO assignment records reflecting RII's ownership of the '744 Registration, is attached hereto as Exhibit 9.

31.    On November 16, 1943, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 404,302 for the trademark LUCKY STRIKE & Design, depicted below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'302 Registration").  Reynolds has used this LUCKY STRIKE mark in interstate commerce in connection with cigarettes since at least June 1926.



The '302 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '302 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '302 Registration, together with USPTO assignment records reflecting RII's ownership of the '302 Registration, is attached hereto as Exhibit 10.  (The '372, '113, '744, and '302 Registrations are referred to collectively hereinafter as the

14

"LUCKY STRIKE Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "LUCKY STRIKE Marks.")

32.    RII owns, *inter alia*, the LUCKY STRIKE Registrations, the LUCKY STRIKE Marks, and all the goodwill associated therewith in the United States.  The STRIKE LUCKY Registrations remain valid, subsisting, and uncancelled, and have become incontestable as described above.

33.    The LUCKY STRIKE Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

34.    The LUCKY STRIKE Marks inherently serve to distinguish Reynolds's tobacco products from those of others.  The LUCKY STRIKE Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the LUCKY STRIKE Marks throughout the United States, consumers of tobacco products recognize the LUCKY STRIKE Marks as symbols of the highest quality of tobacco products, and associate and identify the LUCKY STRIKE Marks with Reynolds or with a single source. Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

<u>SALEM Marks</u>

35.    Beginning at least as early as 1956, Reynolds's predecessor-in-interest adopted and began using the distinctive designation SALEM in interstate commerce for

15

the purpose of identifying and distinguishing its tobacco products from the products of other manufacturers and distributors of tobacco. Reynolds or its predecessors-in-interest have advertised, marketed, distributed, offered for sale, and sold their products under the SALEM mark continuously for nearly sixty (60) years.

36. On November 20, 1956, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 637,365 for the trademark SALEM on the USPTO's Principal Register for use in connection with "cigarettes" (the "'365 Registration"). Reynolds has used the SALEM trademark in interstate commerce in connection with cigarettes since at least March 19, 1956. The '365 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '365 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '365 Registration, together with USPTO assignment records reflecting RII's ownership of the SALEM Registration, is attached hereto as Exhibit 11.

37. On August 12, 2008, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,486,051 for the trademark SALEM & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'051 Registration").

16



Reynolds has used the SALEM & Design trademark in interstate commerce in connection with cigarettes since at least as early as December 1, 2007. The '051 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '051 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '051 Registration, together with USPTO assignment records reflecting RII's ownership of the '051 Registration, is attached hereto as <u>Exhibit 12.</u> (The '365 Registration and the '051 Registration are referred to collectively hereinafter as the "SALEM Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "SALEM Marks.")

38. RII owns, *inter alia*, the SALEM Registrations, the SALEM Marks, and all the goodwill associated therewith in the United States. The SALEM Registrations remain valid, subsisting, and uncancelled, and has become incontestable as described above.

39.    The SALEM Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

40.    The SALEM Marks inherently serve to distinguish Reynolds's tobacco products from those of others.  The SALEM Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the SALEM Marks throughout the United States, consumers of tobacco products recognize the SALEM Marks as symbols of the highest quality of tobacco products, and associate and identify the SALEM Marks with Reynolds or with a single source.  Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

KOOL Marks

41.    Beginning at least as early as 1931, Reynolds's predecessor-in-interest adopted and began using the distinctive designation KOOL in interstate commerce for the purpose of identifying and distinguishing its tobacco products from the products of other manufacturers and distributors of tobacco.  Reynolds or its predecessors-in-interest have advertised, marketed, distributed, offered for sale, and sold their products under the KOOL mark continuously for more than eighty (80) years.

42.    On April 12, 1949, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 508,538 for the trademark KOOL (stylized, as shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'538

Registration"). Reynolds has used this KOOL trademark in interstate commerce in connection with cigarettes since at least November 20, 1931.



The '538 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '538 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '538 Registration, together with USPTO assignment records reflecting RII's ownership of the '538 Registration, is attached hereto as Exhibit 13.

43. On April 2, 1963, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 747,482 for the trademark KOOL on the USPTO's Principal Register for use in connection with "cigarettes" (the "'482 Registration"). Reynolds has used this KOOL mark in interstate commerce in connection with cigarettes since at least November 20, 1931. The '482 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '482 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to

19

use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '482 Registration, together with USPTO assignment records reflecting RII's ownership of the '482 Registration, is attached hereto as <u>Exhibit 14</u>.

44.     On April 2, 1963, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 747,490 for the trademark KOOL & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'490 Registration").  Reynolds has used this KOOL & Design mark in interstate commerce in connection with cigarettes since at least December 1932.



The '490 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '490 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '490 Registration, together with USPTO assignment records reflecting RII's ownership of the '490 Registration, is attached hereto as <u>Exhibit 15</u>.

45.     On October 27, 1998, RII's predecessor-in-interest was granted U.S.

Trademark Registration No. 2,218,589 for the trademark KOOL in stylized form (shown

below) on the USPTO's Principal Register for use in connection with "cigarettes" (the

"'589 Registration").



The '589 Registration, which RII duly acquired by assignment from its predecessors-in-

interest, has become incontestable by virtue of long and continuous use and pursuant to

the provisions of 15 U.S.C. § 1065.  The '589 Registration therefore constitutes

conclusive evidence of the validity of the mark shown therein and of the registration of

said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark

in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate

of Registration for the '589 Registration, together with USPTO assignment records

reflecting RII's ownership of the '589 Registration, is attached hereto as <u>Exhibit 16</u>.  (The

'538, '482, '490, and '589 Registrations are referred to collectively hereinafter as the

"KOOL Registrations," and the trademarks shown therein, and the common law

equivalents of such trademarks, are hereinafter referred to as the "KOOL Marks.")

46.     RII owns, *inter alia*, the KOOL Registrations, the KOOL Marks, and all the

goodwill associated therewith in the United States.  The KOOL Registrations remain

valid, subsisting, and uncancelled, and the KOOL Registrations have become

incontestable as described above.

47.     The KOOL Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

48.     The KOOL Marks inherently serve to distinguish Reynolds's tobacco products from those of others.  The KOOL Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the KOOL Marks throughout the United States, consumers of tobacco products recognize the KOOL Marks as symbols of the highest quality of tobacco products, and associate and identify the KOOL Marks with Reynolds or with a single source.  Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

## Defendants' Unlawful Acts

49.     On information and belief, Defendants operate Defendants' Website which advertises, offers for sale, and sells, among other things, flavored liquid nicotine products for use with electronic cigarettes.

50.     Defendants' Website offers liquid nicotine products in various flavors. Printouts of web pages from Defendants' Website, showing these flavors, are attached hereto as Exhibit 17.

51.     On information and belief, Defendants have advertised, offered for sale, and sold through Defendants' Website various liquid nicotine and electronic cigarette products advertised under and/or bearing the CAMEL Marks, or marks that are confusingly similar to and colorably imitate the CAMEL Marks;  the LUCKY STRIKE

22

Marks, or marks that are confusingly similar to and colorably imitate the LUCKY STRIKE Marks; the SALEM Marks, or marks that are confusingly similar to and colorably imitate the SALEM Marks; and the KOOL Marks, or marks that are confusingly similar to and colorably imitate the KOOL Marks. *See* Exhibit 17. Hereinafter, these liquid nicotine products advertised, offered for sale, and sold by Defendants will be referred to as the "Infringing Products" or, if more specificity is required, the "Infringing CAMEL Products," the "Infringing LUCKY STRIKE Products," the "Infringing SALEM Products" or the "Infringing KOOL Products" as the case may be.

52.     Among the flavors of e-liquid products advertised and offered on Defendants' Website is liquid nicotine identified with the image of a camel. *See* Exhibit 17. Other liquid nicotine products advertised and offered on Defendants' Website are products identified as "LUCKY STRIKE," which also uses the design element of the words LUCKY STRIKE appearing over a red circle; products identified as "Salem, Oregon," which also uses the image of RII's SALEM packaging; and "Menthol Ice," which also includes the word KOOL with a design element that incorporates interlocking O's. *See* Exhibit 17. Examples of Defendants' unauthorized use of RII's CAMEL Marks, WINSTON Marks, SALEM Marks and KOOL Marks or colorable imitations of these above-listed marks, on Defendants' Website are shown below in Figures 1-3, respectively, and in Exhibit 17.

Fig. 1: (Infringing CAMEL Products)

<http://www.thevaporshopinc.com/store/advanced_search_result.php?keywords=camel&
search_in_description=1&x=0&y=0>:



Fig. 2: (Infringing LUCKY STRIKE Products)

<http://www.thevaporshopinc.com/store/advanced_search_result.php?keywords=lucky&
search_in_description=1&x=0&y=0>:



24

Fig. 3: (Infringing SALEM Products)

<http://www.thevaporshopinc.com/store/advanced_search_result.php?keywords=salem&search_in_description=1&x=0&y=0>:



Figure 4: (Infringing KOOL Products)



53.     That Defendants are using and free-riding on the goodwill and reputation of

the famous CAMEL Marks is also evidenced by the fact that Defendants use a depiction

of a camel in connection with the flavor identified as "Turkish Tobacco." *See* <u>Exhibit 17</u>. RII frequently uses the "TURKISH" wording in connection with its CAMEL-branded products. *See* <u>Exhibit 4.</u>

54.     Additionally, Defendants' have incorporated design elements in Defendants' Infringing Product Packaging that further evidence their attempt to free-ride on the goodwill and reputation of RII's marks. Specifically, Defendants are using the following designs:

- a camel depiction that is evocative of and similar to the Camel Design trademarks shown in the '232 and '620 Registrations as well as RII's camel design element shown in the '824 Registration. *See* <u>Exhibits</u> <u>2</u>, <u>3</u>, and <u>5</u>.

- a red dot design that is an identical copy of the LUCKY STRIKE & Design mark shown in the '302 Registration. *See* <u>Exhibit 10</u>;

- a design element that is evocative of and similar to the SALEM & Design packaging design shown in the '051 Registration. *See* <u>Exhibit 12</u>;

- a stylized depiction of the KOOL Mark that incorporates the Interlocking O's that is evocative of and similar to the distinctive Stylized KOOL marks packaging shown in the '538, '490 and '589 Registrations. *See* <u>Exhibits</u> <u>13</u>, <u>15</u>, and <u>16</u>.

55.     Moreover, Defendants' intent to free-ride on the goodwill and reputation of the famous CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks, and KOOL Marks is evidenced by the following language present on Defendants' Website:

- "Our take on the Camel type tobacco;"

- "Our take on a Lucky Strike type flavor;"

- "Our take on a Salem type tobacco flavor;" and

- "The strongest menthol flavor we carry which is comparable to a Kool cigarette."

*See* Exhibit 17.

56.     On information and belief, Defendants have sold and continue to sell the Infringing Products through Defendants' Website to purchasers throughout the United States, including North Carolina.

57.     True and correct printouts of photographs of Infringing CAMEL Products, Infringing LUCKY STRIKE Products, Infringing SALEM Products, and the Infringing KOOL Products as received by a purchaser in North Carolina, are attached hereto as Exhibit 18.

58.     Reynolds did not and does not manufacture, distribute, market, offer for sale, or sell any electronic cigarette or liquid nicotine products under the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks or KOOL Marks.

59.     RII has not authorized, and does not authorize, Defendants' use of the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks or KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the manufacture or sale of Defendants' liquid nicotine products or any other products of Defendants.

## FIRST CLAIM FOR RELIEF
## (Infringement of Federally Registered Trademarks
## under 15 U.S.C. § 1114)

60.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

61.     Defendants' unauthorized use of the registered CAMEL Marks and Defendants' sale of Infringing CAMEL Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendants' Infringing CAMEL Products are products authorized by RII for sale under the CAMEL Marks, partaking of the same qualities and characteristics as products bearing the CAMEL Marks, when such is not the case.

62.     By their unauthorized sale of the Infringing CAMEL Products, Defendants have infringed and continue to infringe the registered CAMEL Marks, as shown in the CAMEL Registrations, respectively, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

63.     Defendants' unauthorized use of the registered LUCKY STRIKE Marks and Defendants' sale of Infringing LUCKY STRIKE Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendants' Infringing LUCKY STRIKE Products are products authorized by RII for sale under the LUCKY STRIKE Marks, partaking of the same qualities and characteristics as products bearing the LUCKY STRIKE Marks, when such is not the case.

28

64.     By their unauthorized sale of the Infringing LUCKY STRIKE Products,

Defendants have infringed and continue to infringe the registered LUCKY STRIKE

Marks, as shown in the LUCKY STRIKE Registrations, respectively, in violation of § 32

of the Lanham Act, 15 U.S.C. § 1114.

65.     Defendants' unauthorized use of the registered SALEM Marks and

Defendants' sale of Infringing SALEM Products are likely to cause confusion, mistake,

or deception among consumers as to the source, origin, or sponsorship of such products.

The consuming public is likely to believe that Defendants' Infringing SALEM Products

are products authorized by RII for sale under the SALEM Marks, partaking of the same

qualities and characteristics as products bearing the SALEM Marks, when such is not the

case.

66.     By their unauthorized sale of the Infringing SALEM Products, Defendants

have infringed and continue to infringe the registered SALEM Marks, as shown in the

SALEM Registrations, respectively, in violation of § 32 of the Lanham Act, 15 U.S.C. §

1114.

67.     Defendants' unauthorized use of the registered KOOL Marks and

Defendants' sale of Infringing KOOL Products are likely to cause confusion, mistake, or

deception among consumers as to the source, origin, or sponsorship of such products.

The consuming public is likely to believe that Defendants' Infringing KOOL Products are

products authorized by RII for sale under the KOOL Marks, partaking of the same

qualities and characteristics as products bearing the KOOL Marks, when such is not the

case.

68.     By their unauthorized sale of the Infringing KOOL Products, Defendants have infringed and continue to infringe the registered KOOL Marks, as shown in the KOOL Registrations, respectively, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

69.     Defendants' unauthorized sale of their Infringing CAMEL Products, Infringing LUCKY STRIKE Products, Infringing SALEM Products and Infringing KOOL Products, and Defendants' unauthorized use of the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks or colorable imitations of any of these above-listed marks owned by RII, in connection with the sale of such products, as alleged above, was intentionally done with a view and purpose of trading on and benefiting from the substantial reputation and goodwill in the United States associated with CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks.

70.     Defendants' acts of trademark infringement, as alleged herein, have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct.  In addition, Defendants have been unjustly enriched by reason of their trademark infringement in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

71.     Defendants' trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

72.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their infringing use of the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks or colorable imitations of any of these above-listed marks owned by RII, in connection with the offering for sale and sale of electronic cigarette and liquid nicotine products or related products, and the costs of this action.

73.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition, False Representation, and False Designation of Origin under 15 U.S.C. § 1125(a))

74.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

75.     Defendants' unauthorized use of the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the sale of Defendants' Infringing CAMEL Products, Infringing LUCKY STRIKE Products, Infringing SALEM Products and Infringing KOOL Products, respectively, constitutes unfair competition, false representation, and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is causing and, unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to deceive purchasers and consumers as to the

31

source, origin, or sponsorship of Defendants' products.

76.     As a direct and proximate result of Defendants' unfair competition, false representation, and false designation of origin as herein alleged, RII has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Defendants' unfair competition, false representation, and false designation of origin has caused and will continue to cause RII to lose sales to which it would otherwise be entitled, unless such unlawful conduct is enjoined by this Court.

77.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unauthorized use of the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the offering for sale and sale of electronic cigarette and liquid nicotine products or related products, and the costs of this action.

78.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

## THIRD CLAIM FOR RELIEF
### (Dilution of Federally Registered Trademarks
### under 15 U.S.C. § 1125(c))

79.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

80.     The CAMEL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods.  The CAMEL Marks became famous long prior to Defendants' unlawful use of the CAMEL Marks, or colorable imitations thereof, as alleged herein.

81.     Defendants' use of the CAMEL Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of their Infringing CAMEL Products is likely to dilute RII's famous CAMEL Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous CAMEL Marks and by harming the reputation and goodwill of the famous CAMEL Marks.

82.     The LUCKY STRIKE Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods.  The LUCKY STRIKE Marks became famous long prior to Defendants' unlawful use of the LUCKY STRIKE Marks, or colorable imitations thereof, as alleged herein.

33

83.     Defendants' use of the LUCKY STRIKE Marks, or colorable imitations

thereof, in connection with the unauthorized sale in the United States of Infringing

LUCKY STRIKE Products is likely to dilute RII's famous LUCKY STRIKE Marks, in

violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity

to identify and distinguish Reynolds exclusively as the source of products in the United

States bearing or provided under the famous LUCKY STRIKE Marks and by harming the

reputation and goodwill of the famous LUCKY STRIKE Marks.

84.     The SALEM Marks are famous trademarks under 15 U.S.C. §

1125(c)(2)(A), in that they are widely recognized by the general consuming public of the

United States as a designation of the source of Reynolds's goods.  The SALEM Marks

became famous long prior to Defendants' unlawful use of the SALEM Marks, or

colorable imitations thereof, as alleged herein.

85.     Defendants' use of the SALEM Marks, or colorable imitations thereof, in

connection with the unauthorized sale in the United States of Infringing SALEM

Products is likely to dilute RII's SALEM Marks, in violation of § 43(c) of the Lanham

Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds

exclusively as the source of products in the United States bearing or provided under the

famous SALEM Marks and by harming the reputation and goodwill of the famous

SALEM Marks.

86.     The KOOL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A),

in that they are widely recognized by the general consuming public of the United States

as a designation of the source of Reynolds's goods.  The KOOL Marks became famous

long prior to Defendants' unlawful use of the KOOL Marks, or colorable imitations thereof, as alleged herein.

87.     Defendants' use of the KOOL Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of Infringing KOOL Products is likely to dilute RII's famous KOOL Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous KOOL Marks and by harming the reputation and goodwill of the famous KOOL Marks.

88.     Defendants' unauthorized use of the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks in connection with the sale in the United States of Defendants' Infringing CAMEL Products, Infringing LUCKY STRIKE Products, Infringing SALEM Products and Infringing KOOL Products, respectively, is intended and has the effect of trading on Reynolds's reputation and causing likely dilution of the famous CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks.

89.     On information and belief, Defendants cannot assert any rights in the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks that are prior to RII's first use, actual or constructive, of the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks, respectively.

90.     Defendants' trademark dilution as herein alleged has injured and will continue to injure RII in that RII has suffered and will continue to suffer damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal

conduct, unless such unlawful conduct is enjoined by this Court. In addition, Defendants have been unjustly enriched by reason of their acts of trademark dilution in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

91. RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unlawful use of the CAMEL Marks, LUCKY STRIKE Marks, SALEM Marks and KOOL Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with Defendants' offering for sale and sale of electronic cigarette and liquid nicotine products or related products, and the costs of this action.

92. Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

### FOURTH CLAIM FOR RELIEF
**(Common Law Trademark Infringement and Unfair Competition)**

93. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

94. Defendants' conduct as alleged above constitutes trademark infringement and unfair competition in violation of the common law of the State of North Carolina.

95. Defendants' trademark infringement and unfair competition as alleged above has injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct. In addition,

Defendants have been unjustly enriched by reason of their trademark infringement and unfair competition in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

96.     Unless enjoined by this Court, Defendants' trademark infringement and unfair competition as herein alleged will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill.

97.     Defendants' wrongful conduct as above alleged was accompanied by circumstances of willfulness and deliberate indifference to the rights of RII, warranting the assessment of punitive damages.

## FIFTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1 *et seq.*)

98.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

99.     Defendants' conduct as alleged above is in commerce and affects commerce in the State of North Carolina.

100.     Defendants' conduct as alleged above constitutes unfair methods of competition and unfair and deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1 *et seq.*

101.     Defendants' unfair methods of competition and their unfair and deceptive trade practices as alleged herein have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal

37

conduct. In addition, Defendants have been unjustly enriched by reason of their unfair methods of competition and unfair and deceptive trade practices in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

102. Defendants have willfully engaged in the acts and practices alleged above, justifying an award of attorneys' fees to RII pursuant to N.C. Gen. Stat. § 75-16.1.

**WHEREFORE**, RII prays the Court as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any and all further unauthorized promotion, marketing, advertising, sale, offering for sale, or distribution of:

    a. products bearing the CAMEL Marks, or colorable imitations thereof, including without limitation Defendants' Infringing CAMEL Products;

    b. products bearing the LUCKY STRIKE Marks, or colorable imitations thereof, including without limitation Defendants' Infringing LUCKY STRIKE Products;

    c. products bearing the SALEM Marks, or colorable imitations thereof, including without limitation Defendants' Infringing SALEM Products;

    d. products bearing the KOOL Marks, or colorable imitations thereof, including without limitation Defendants' Infringing KOOL Products; and

2. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily

38

and permanently enjoined from any unauthorized sale, offering for sale, or distribution of products bearing any trademark owned by RII, or any colorable imitations thereof;

3.    That RII have and recover of Defendants such actual damages as RII may prove at trial;

4.    That Defendants account to RII for all of Defendants' profits derived as a direct and proximate result of Defendants' unlawful conduct;

5.    That such damages and/or profits to which RII is entitled be trebled pursuant to 15 U.S.C. § 1117 and N.C. Gen. Stat. § 75-16;

6.    That, in the alternative to treble damages and/or profits, RII have and recover punitive damages of Defendants;

7.    That the costs of this action, including a reasonable attorneys' fee, be taxed against Defendants; and

8.    That the Court grant RII such other and further relief as the Court may deem just and proper.

This the 15th day of April, 2015.

<div align="right">

*s/William M. Bryner*
KILPATRICK TOWNSEND & STOCKTON LLP

William M. Bryner, N.C. State Bar No. 23022
Harris W. Henderson, N.C. State Bar No. 43399
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: 336-607-7300
Facsimile: 336-607-7500
wbryner@kilpatricktownsend.com
hhenderson@kilpatricktownsend.com

*Attorneys for Plaintiff Reynolds Innovations Inc.*

</div>